# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44227

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 500 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 27, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| MICHAEL ANTHONY LOYA, JR., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of conviction and sentences, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Michael Anthony Loya, Jr. appeals from his judgment of conviction entered after a jury found him guilty of battery on a law enforcement officer and possession of methamphetamine. On appeal, Loya argues: (1) the prosecutor committed misconduct by appealing to the jury's passions and prejudices during voir dire and by engendering sympathy for law enforcement during closing argument; (2) the district court abused its discretion in admitting evidence without engaging in the Idaho Rule of Evidence 404(b) balancing test; (3) Loya was denied his right to due process because there was a fatal variance between the charging document and the jury instruction; (4) the district court abused its discretion in sentencing Loya; and (5) the district court abused its discretion in denying Loya's Idaho Criminal Rule 35 motion.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

An officer arrived at a house to investigate a report of stolen property and obtained permission from the homeowner to enter and search the home. In the hallway leading to the living room, there was a locked bathroom door. The homeowner did not have a key to the locked bathroom so she provided the officer with tools to unlock the door. When the officer unlocked and opened the door, he observed an individual sitting on the toilet; the toilet seat was down. Although the bathroom lights were off, the hallway and living room lights provided sufficient ambient lighting for the officer to identify the individual as Loya.

Once the officer recognized Loya, the officer moved three to four feet away from the open door and stood in the living room. The officer asked Loya: "You have a warrant, don't ya?" and "Remember me, from the jail?" Loya grunted and nodded his head. When Loya stood up, the officer told him to sit down and take his hands out of his pockets. Loya took his hands out of his pockets, but he did not sit down. Instead, Loya hit the officer in the face and continued to punch the officer several times. The officer subdued Loya with a knee strike and arrested Loya. When Loya was searched at the jail, a broken methamphetamine pipe containing methamphetamine residue was found in his shirt pocket.

The State charged Loya with battery on a law enforcement officer, Idaho Code §§ 18-915(3), -903(a) and/or (b), and possession of a controlled substance, methamphetamine, I.C. § 37-2732(c)(1). The State moved in limine to present an audio recording of the officer's contact with Loya, in which the officer asked Loya: "You have a warrant, don't ya?" and "Remember me, from the jail?" The State also moved in limine to present an audio recording of Loya's statement about the officer, in which Loya stated: "he's an asshole, anyway. He worked for the county back in the day." After a hearing, the district court granted the State's motion in limine, holding the evidence was admissible. The district court redacted Loya's reference to the officer as an "asshole." The case proceeded to trial.

A jury found Loya guilty of battery on a law enforcement officer and possession of methamphetamine. The district court sentenced Loya to a unified five-year sentence, with three years determinate, for battery on a law enforcement officer, and a unified seven-year sentence, with six months determinate, for possession of methamphetamine, to be served consecutively.

Loya filed a timely Rule 35 motion, asking the district court to reduce the fixed portion of his sentence. Loya asserted he needed additional substance abuse treatment to succeed in the community and "[a]n earlier parole eligibility date may make treatment available earlier to Mr. Loya and potentially reduce the risk of further institutionalization." Further, Loya argued an earlier parole eligibility date would provide an incentive for Loya to comply with programming rules. The district court denied Loya's Rule 35 motion without a hearing, finding that Loya did not provide new or additional information to support his Rule 35 motion. Loya timely appeals.

## II.

## ANALYSIS

### A. The Prosecutor Did Not Commit Prosecutorial Misconduct

Loya asserts the prosecutor committed misconduct by: (1) appealing to the passions and prejudices of the jury during voir dire; and (2) engendering sympathy for law enforcement during closing argument. Loya argues the misconduct, taken individually or together, amounts to fundamental error because it denied him his right to due process of law and his right to a fair trial, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, § 13 of the Idaho Constitution. The State argues Loya failed to show that any prosecutorial misconduct constituted fundamental error.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* Loya acknowledges that he made no contemporaneous objection to the prosecutor's voir dire or closing argument at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

3

## 1. The prosecutor did not commit misconduct during voir dire

Loya argues the prosecutor's statement during voir dire improperly appealed to the passions and prejudices of the jury. The prosecutor stated: "You're going to hear from the officer in this case. I think all my witnesses are law enforcement officers, as a matter of fact. And everybody knows that police get experience and training through their official duties, which can sometimes increase their reliability as witnesses." This statement was a preface to the question: "You would start off police officers on the same level as everybody else before they testified and listen to what they had to say before you decided whether to believe them, wouldn't you?"

It is well established that great latitude is allowed during voir dire questioning. *State v. Dunlap*, 155 Idaho 345, 369, 313 P.3d 1, 25 (2013). Loya's argument on appeal is predicated upon an isolated comment that the prosecutor made during voir dire--that police training can potentially increase an officer's reliability as a witness. The written transcript cannot convey all the various meanings of words and phrases that are conveyed by the human voice through tone, inflection, and nuance. As such, the meaning of the prosecutor's remark may have depended on the inflection used and cannot be determined merely from the transcript. Because of this Court's inherently limited ability to review the prosecutor's statement by appellate transcript, we look to the context of the statement. The prosecutor's statement about an officer's reliability as a witness preceded the prosecutor's question to potential jurors whether they would treat officer testimony differently than other witnesses. The purpose of voir dire is to obtain a fair and unbiased jury. *See State v. Laymon*, 140 Idaho 768, 771, 101 P.3d 712, 715 (Ct. App. 2004) ("[T]he purpose of voir dire is to discover which, if any, of the potential jurors are unable to meet the demands such service requires."). When read in context, the alleged inappropriate question can be read as part of the prosecutor's attempt to determine bias or prejudice in potential jurors, not as attempting to bolster the credibility of the witness. It is the duty of the attorneys to address whether potential jurors would treat testimony from law enforcement officers differently than from other witnesses, and so, we do not find that the prosecutor's statement during voir dire constituted misconduct.

## 2. The prosecutor did not commit misconduct during closing argument

Loya contends the prosecutor committed misconduct during closing argument by engendering sympathy for the officer. Closing argument serves to sharpen and clarify the issues

for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998).

During closing argument, the prosecutor stated:

> [The officer] has worked in law enforcement for a number of years. It takes a special person to continue to do this job in today's anti-law enforcement climate. And on November 4th of 2015, that's what he was doing. He was doing his job, ferreting out crime in our little town, following up on a report about a stolen couple of TVs at somebody's house.

While a reference to "anti-law enforcement" might be perceived as an inappropriate statement, it does not, in this case, appear to be inflammatory or designed to engender sympathy. The crime of battery on a law enforcement officer is, by its very nature, "anti-law enforcement." The statement does not constitute misconduct and even if it was misconduct, the statement did not contribute to the verdict in this case.

The prosecutor also stated:

> The last thing that [the officer] expected to find was a wanted man inside of a dark bathroom when he went inside that house.
> The other thing he didn't expect to have happen was for that man to come out of that room with violence, violence toward a police officer, who was just nicely doing his job.

This commentary, Loya argues, was an impermissible attempt to obtain a guilty verdict by argument aimed at engendering sympathy for the officer. Because parties are given considerable latitude during their closing arguments, the prosecutor's statements are not misconduct. The word "nicely" does not appear to have been chosen to engender sympathy for the officer but rather, to highlight the lack of provocation for Loya's violent reaction to the officer's request. While the statements might be viewed as straying somewhat beyond comments on the evidence, they were not inflammatory. We do not find that the arguments were such that

5

there is a reasonable possibility that they altered the outcome of the trial. Thus, the prosecutor did not commit misconduct during closing argument. As Loya has not shown prosecutorial misconduct, Loya failed to establish fundamental error.

**B.      Loya Has Not Preserved a Claim on Appeal That the District Court Abused Its Discretion in Not Conducting the Proper Analysis Under I.R.E. 404(b)**

The State moved in limine to present an audio recording of the officer's contact with Loya, in which the officer asked Loya: "You have a warrant, don't ya?" and "Remember me, from the jail?" The State also moved in limine to present an audio recording of Loya's statement while at the jail about the officer, in which Loya stated: "he's an asshole, anyway. He worked for the county back in the day." The district court held all three statements were admissible, explaining:

> Well, on the stipulation, then, the outstanding warrant will be clearly allowable by both parties and a basis of the arrest.
> Further, the court will allow the fact that the defendant was aware of this officer from prior experience in the jail so long as that is not overly emphasized or punctuated; and as with any motion in limine, things can change at trial; but the notion that--and this is, I'm quoting from page two of the motion--state intends to produce an audio recording stating he worked for the county back in the day, I think that, that's fine; and the fact that he had knowledge of him as an officer in the jail is fine.
> I would support the objection about this "asshole" statement at this point. I feel that, under Rule 403, where the defendant is asking it be removed, that it be sanitized. His own opinion or use of that word, I believe, at this juncture, on the cold record before me is more prejudicial than it would be probative, although likely has relevance; but under 403, in my discretion at this point, I will deny it.

On appeal, Loya argues the district court abused its discretion by not conducting the proper analysis under I.R.E. 404(b) before admitting the audio recording of the officer's question to Loya: "Remember me, from the jail?" Loya does not argue the district court abused its discretion in admitting the officer's warrant question and Loya's statement at the jail. The State contends this issue is not preserved for appeal because Loya did not object at district court. We agree with the State.

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010). Issues not raised below generally may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated or the basis of the objection

must be apparent from the context. *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003).

At the motion in limine hearing, Loya's trial counsel argued: "And the fact that the defendant knew [the officer], we understand that's relevant; and the state is likely entitled to that regardless of our objection to that point." This statement presupposes there was a specific objection from which we could determine the context of the objection. However, the record does not contain any written objections to the admission of that specific statement. To the extent that the statement constituted a verbal objection, there is no argument provided as to the basis of that objection.

Loya's trial counsel then argued:

> I am a little concerned, though, with the language describing [the officer]. The fact that the defendant said [the officer] worked for the county back in the day is not so concerning to me; and obviously, the jurors may infer from that the county jail, and maybe [Loya's] a jail bird and he's been in the county jail a lot, and so he's probably guilty this time, but there is some danger there. But as long as the state doesn't focus extensively or more than that on the defendant's past jail history, which is extensive, I think that undue prejudice that they will infer he was guilty in this case because of his status as being a frequent flyer so-to-speak back, back in the day is hopefully mitigated.

Trial counsel's subsequent argument only references Loya's statement while at the jail. Trial counsel does not mention or reference the officer's "remember me" question. Thus, when viewed in context, Loya's argument at the motion in limine hearing regarded the admissibility of Loya's statement while at the jail, not the officer's "remember me" question.

As there was no general or specific objection, either written or verbal, to the admissibility of the officer's "remember me" question, Loya has not preserved a claim on appeal that the district court abused its discretion in ruling the question was admissible at trial.

## C.     Loya Has Failed to Demonstrate Fundamental Error

Loya argues jury instruction 15 allowed the jury to convict him for battery on a law enforcement officer on a negligence alternative that was not included in the charging document. Loya argues he was denied his constitutional right to due process because of the fatal variance between the charging document and the jury instruction. The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-fold. First, we must determine whether

7

there is a variance between the information used to charge Loya with battery on a law enforcement officer and the instructions presented to the jury. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id.*

Where, as here, the defendant did not object to the alleged error below, the following three prongs must be met to obtain relief on appeal for fundamental error: (1) the defendant must demonstrate one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate there is a reasonable possibility that the error affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

The charging document charged Loya with battery on a law enforcement officer and read, in relevant part:

> That the Defendant, MICHAEL ANTHONY LOYA, JR., on or about the 4th day of November, 2015, in the County of Twin Falls, State of Idaho, did willfully and unlawfully use force and/or violence upon the person of [the officer] by striking him, where the Defendant *knew or had reason to know* that [the officer] was a police officer and did commit said battery while [the officer] was engaged in the performance of his duties, in violation of Idaho Code Sections 18-915(3) and 18-903(a).

(Emphasis added). Jury instruction 15 instructed the jury as follows:

> In order for the defendant to be guilty of Count I, Battery on a Police Officer, the State must prove each of the following:
> 1. On or about November 4, 2015,
> 2. in the State of Idaho,
> 3. the defendant, MICHAEL ANTHONY LOYA, JR., committed a battery,
> 4. upon [the officer],
> 5. by willfully and unlawfully using force and/or violence upon the person of [the officer] by striking him, and
> 6. at the time of the offense, [the officer] was a police officer, and
> 7. the offense was committed while [the officer] was engaged in the performance of his duties, and
> 8. MICHAEL ANTHONY LOYA, JR. *knew or reasonably should have known* that [the officer] was a police officer.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

(Emphasis added).

8

Here, there is no variance because both the charging document and the jury instruction contain a negligence standard. The charging document provided that Loya "knew or had reason to know" the officer was a police officer. "Had" is the simple past tense of the verb "to have," which means to hold, keep, or retain. WEBSTER'S THIRD NEW INT'L DICT. 1039 (3d ed. 1993). "Reason to know" is defined as:

> Information from which a person of ordinary intelligence--or of the superior intelligence that the person may have--would infer that the fact in question exists or that there is substantial enough chance of its existence that, if the person exercises reasonable care, the person can assume the fact exists.

BLACK'S LAW DICTIONARY 1294 (8th ed. 2004). Thus, "had reason to know" is a negligence standard as it means that at the time of the altercation, based on the information available, Loya would have inferred that the officer was a police officer, or that there was a substantial enough chance that Loya could assume the officer was a police officer. *See Barab v. Plumleigh*, 123 Idaho 890, 894, 853 P.2d 635, 639 (Ct. App. 1993) (because there are no facts to support an inference that the defendants knew or had any reason to know of a defect, a claim that defendants negligently failed to warn the plaintiff of a known, dangerous condition cannot be established); *Goodrich v. Seamands*, 870 P.2d 1061, 1065 (Wyo. 1994) ("Necessary to every negligence action is proof that the defendant owed the plaintiff a duty. In this case the [defendants] had a duty to disclose only if they knew or had reason to know of the defects.").

The jury instruction provided that Loya "knew or reasonably should have known" the officer was a police officer. "Reasonably" means "in a reasonable manner," and "reasonable" means "not conflicting with reason" and "being or remaining within the bounds of reason." WEBSTER'S THIRD NEW INT'L DICT. 1892 (3d ed. 1993). The word "should" has the function of "express[ing] . . . obligation." WEBSTER'S THIRD NEW INT'L DICT. 2104 (3d ed. 1993). In other words, the knowledge that the officer was an officer was considered to be an obligation because there was a substantial chance of the fact's existence and that it would be unreasonable not to know the fact. Like "had reason to know," "reasonably should have known" is also a negligence standard. *See State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999) (by adding "should have known" in the element instruction, the instruction allowed the jury to convict the defendant under a negligence standard).

In *State v. Page*, 135 Idaho 214, 16 P.3d 890 (2000), the issue was whether the jury was properly instructed as to the burden of proof when the jury instruction stated: "the defendant

9

knew or had reason to know [the officer] was a peace officer." *Id.* at 220, 16 P.3d at 896. The Court held: "Reading the instructions as a whole, it is clear that the jury was properly instructed on the burden of proof. The jury was required to find beyond a reasonable doubt that Page knew Rogers was a police officer." *Id.* at 221, 16 P.3d at 897. *Page* interpreted the meaning of "had reason to know" as meaning "know." *Id.* "Know" is defined as "to recognize" and "to have acquaintance or familiarity with through experience or acquisition of information or hearsay." WEBSTER'S THIRD NEW INT'L DICT. 1252 (3d ed. 1993). Because "had reason to know" and "reasonably should have known" have the same meaning, we can conclude that under *Page*, "reasonably should have known" is also interpreted to mean "know." Thus, there was no variance between the charging document and the jury instruction because both required Loya to have knowledge that the officer was a police officer. Because there is no variance, we need not examine prejudicial error.

Even if there was a variance, the variance was not fatal. A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment, as opposed to a mere variance, occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *Id.*; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). In other words, a variance between a charging document and a jury instruction requires reversal only when it deprives the defendant of fair notice of the charge against which he or she must defend or leaves him or her open to the risk of double jeopardy. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007). The notice element requires courts to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *State v. Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985).

In this case, any variance was not fatal because it did not deprive Loya of fair notice of the charges against him. The evidence Loya needed to present in order to defend against the charge that he "knew or had reason to know" the officer was a police officer was the same evidence necessary to present in order to refute that Loya "knew or reasonably should have known" the officer was a police officer. As Loya would have had to produce the same evidence, Loya had fair notice of the charge against which he must defend. The State presented testimony from the officer that the officer was in uniform and Loya was familiar with the officer and Loya

10

acknowledged he knew the officer from a previous encounter. The State also presented evidence that although Loya was in a dark bathroom, the lighting from the living room and hallway provided enough ambient light for the officer to recognize Loya. Loya presented no evidence or argument that he did not know the officer or that there was insufficient information for Loya to infer that the officer was a police officer. Because Loya had fair notice and was not prejudiced in the presentation of his defense, any variance between the charging document and the jury instruction was not fatal. As such, Loya has failed to demonstrate fundamental error.

**D.      Loya's Sentences for Battery on a Law Enforcement Officer and Possession of Methamphetamine Were Not Excessive**

Loya argues the district court abused its discretion when it imposed excessive sentences. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Loya argues the district court failed to consider mitigating factors in determining appropriate sentences. These factors consist of Loya being aware of his alcohol problem, his interest in seeking treatment for alcohol abuse, his supportive family, and his remorse.

The district court imposed a unified five-year sentence, with three years determinate, for battery on a law enforcement officer and a unified seven-year term, with six months determinate, for possession of methamphetamine. At the sentencing hearing, the district court observed some mitigating factors. However, the district court expressed its concern about Loya, stating:

11

It could simply be that you are a very anti-social young man who is just not really respecting others, whether it's people within the jail system itself, whether it's co-inmates, whether it's jailers who you are trying to bribe, whether it's the laws of our community and policemen who are tasked to enforce them.

That to me is, frankly, the biggest issue here, when you couple that with your alcohol troubles and your lack of a desire. You use the words, I think, "F it," in the PSI in terms of your attitude once you came out on parole and began your spiral. And someone who has got that attitude and who is on parole and really is unsupervisable gives me pause as I consider what I do today.

The district court recognized there was opportunity for Loya in prison "to show you deserve probation, show you are willing to come out and actually parole and that you are willing to come out and maybe do better with some growth and time away than you have done so far." The district court explained its sentence, stating:

So that's why I am choosing a little different sentence than what the state or you have recommended today. But again, my effort is to note that you haven't taken advantage of treatment opportunities that have been made available to you since you began in the criminal justice system and even up through and including your time on parole and in the jail.

You were in violation status when this happened; and so continued community service, I think, is going to take some time to get there. You were avoiding supervision and engaging in lawless behaviors, which ended up with this altercation with the officer.

There's also the issues in the jail that have been referenced and your overall lack of remorse as stated in your allocution.

Loya's argument that the district court failed to consider mitigating factors during sentencing has no merit. The district court recognized the testimony of Loya's uncle, but determined Loya's "history is the opposite of that and shows [a] young man who's very much potentially, as [trial counsel] said, caught in the throes of juvenile adolescence behavior due to alcohol." The district court also found that Loya has not taken advantage of treatment opportunities, was on probation when he committed the crimes in this case, and lacked remorse. The district court had the discretion to give greater weight to certain factors and sentenced Loya accordingly. Loya has failed to show, under any view of the facts, that his sentences were a clear abuse of discretion. Therefore, we hold that the district court did not abuse its discretion, and Loya's sentences for battery on a law enforcement officer and possession of methamphetamine were not excessive.

12

**E.** **The District Court Did Not Abuse Its Discretion in Denying Loya's Idaho Criminal Rule 35 Motion**

Loya argues the district court abused its discretion when it denied Loya's Rule 35 motion for a sentence reduction. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). An appeal from the denial of a Rule 35 motion cannot be used as a vehicle to review the underlying sentence absent the presentation of new information. *Id.* Because no new or additional information in support of Loya's Rule 35 motion was presented, the district court did not abuse its discretion.

## III.

## CONCLUSION

First, Loya failed to establish fundamental error because the prosecutor did not commit misconduct. Second, Loya has not preserved his claim on appeal that the district court abused its discretion in failing to conduct an I.R.E. 404(b) analysis because Loya did not object to the admission of the officer's "remember me" question at trial. Third, Loya failed to establish fundamental error because there was no variance between the charging document and the jury instruction. Fourth, the district court did not abuse its discretion in sentencing Loya. Finally, the district court did not abuse its discretion in denying Loya's Rule 35 motion. Accordingly, Loya's judgment of conviction and sentences are affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.